IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JUAN FLORES NAVARRO, | § | |
| TDCJ #602579, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-0479 |
| | § | |
| DOUG DRETKE, Director, | § | |
| Texas Department of Criminal Justice - | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

State inmate Juan Flores Navarro has filed a petition for a federal writ of habeas corpus to challenge the result of several prison disciplinary convictions. The respondent has filed a motion for summary judgment, arguing that Navarro is not entitled to federal habeas corpus relief. (Docket Entry No. 13). Navarro has filed a response to the motion. (Docket Entry No. 23). After considering all of the pleadings, the disciplinary hearing records, and the applicable law, the Court grants the respondent's motion and dismisses this case for reasons set forth below.

## I.   BACKGROUND

Navarro is currently incarcerated in Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ") as the result of a conviction entered against him in the 119th District Court of Tom Green County, Texas, in cause number CR-91-0410-B. In that case, Navarro was sentenced on November 15, 1991, to serve forty years

of imprisonment for the felony offense of injury to a child.  Navarro does not challenge his underlying conviction here.  Instead, he contests the result of a several prison disciplinary proceedings lodged against him at the Ellis Unit in Huntsville, Texas, where he formerly resided.  In particular, Navarro challenges the disciplinary convictions that he received in case numbers 20040160537, 20040166370, 20040170176, and 20040175500.  Each case is described briefly below.

### Case Number 20040160537

On February 10, 2004, Navarro was found guilty, following a disciplinary hearing in case number 20040160537, of "refusing to accept a housing assignment" in violation of prison rules.  (Docket Entry No. 12, *Disciplinary Hearing Report*, at 1).  As punishment, the disciplinary captain curtailed Navarro's commissary privileges for 45 days, restricted him to his cell for 45 days, reduced his class status from S4 to L1, and revoked 30 days of previously earned credit for good conduct (*i.e.*, "good-time" credit).  Navarro did not file an appeal from his disciplinary conviction in case number 2004160537.  (Docket Entry No. 12, *Disciplinary Grievance Records*).

### Case Number 20040166370

On February 13, 2004, Navarro was found guilty of refusing to accept a housing assignment again, following a disciplinary hearing in case number 20040166370.  (Docket Entry No. 12, *Disciplinary Hearing Report*, at 13).  As punishment, the disciplinary captain suspended Navarro's commissary privileges for 45 days, restricted him to his cell for 45 days, reduced his class status from L1 to L3, and revoked 60 days of good-time credit.

2

Navarro did not file an appeal from his disciplinary conviction in case number 20040166370. (Docket Entry No. 12, *Disciplinary Grievance Records*).

### Case Number 20040170176

On February 19, 2004, Navarro was found guilty a third time of refusing to accept a housing assignment. (Docket Entry No. 12, *Disciplinary Hearing Report*, at 23). Following a disciplinary hearing in case number 20040170176, the disciplinary captain suspended Navarro's commissary privileges for 10 days, restricted him to his cell for 10 days, and revoked 60 days of good-time credit. Navarro did not file an appeal from his disciplinary conviction in case number 20040170176. (Docket Entry No. 12, *Disciplinary Grievance Records*).

### Case Number 20040175500

On February 23, 2004, Navarro received a fourth disciplinary conviction for refusing to accept a housing assignment. (Docket Entry No. 12, *Disciplinary Hearing Report*, at 32). After a disciplinary hearing in case number 20040175500, the disciplinary captain revoked Navarro's commissary, recreation, and property privileges for 30 days, restricted him to his cell for 30 days, and forfeited 730 days of good-time credit. Thereafter, Navarro filed a Step 1 Grievance to appeal his disciplinary conviction in case number 20040175500. (Docket Entry No. 12, *Disciplinary Grievance Records*). After his Step 1 Grievance was denied, Navarro appealed further by filing a Step 2 Grievance to challenge the result. (*See id.*). Prison officials rejected Navarro's appeal by denying his Step 2 Grievance on April 28, 2004. (*See id.*).

Navarro seeks federal habeas corpus relief from all four of his disciplinary convictions for failure to accept a housing assignment at the Ellis Unit during February of 2004. According to the pending petition and supporting memorandum, Navarro argues that he was denied due process and equal protection during his disciplinary proceeding because he had a valid reason to refuse housing. The respondent argues that Navarro's claims fail as a matter of law. The parties' contentions are addressed below in light of the applicable standard of review.

## II.   <u>STANDARD OF REVIEW</u>

The respondent's motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. In deciding a motion for summary judgment under Rule 56, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). A movant's burden is to point out the absence of evidence supporting the nonmovant's case. *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 323; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)). To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. *Id.* (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 349 (5th Cir. 2001)).

4

An issue is material if its resolution could affect the outcome of the action. *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). In deciding whether a fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Hotard v. State Farm Fire & Cas. Co.,* 286 F.3d 814, 817 (5th Cir. 2002). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy – that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999).

The petitioner proceeds *pro se* in this case. Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519 (1972); *see also Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999) ("[I]n this circuit *pro se* habeas petitions are construed liberally and are not held to the same stringent and rigorous standards as are pleadings filed by lawyers."). Pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them. *See Haines*, 404 U.S. at 521; *see also United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dept.*, 84 F.3d 469, 473 & n.16 (5th Cir. 1996)). Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *See Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

5

III.    **EXHAUSTION AND PROCEDURAL DEFAULT**

At the outset, the respondent notes that Navarro did not file an appeal to challenge his disciplinary convictions in case numbers 20040160537, 20040166370, and 20040170176. The record confirms that Navarro only completed Step 1 and Step 2 Grievances to challenge his conviction in case number 20040175500. (Docket Entry No. 12, *Disciplinary Grievance Records*). Because Navarro did not complete both steps of the grievance process with respect to case numbers 20040160537, 20040166370, and 20040170176, the respondent argues that any challenge to these convictions is procedurally barred because he failed to exhaust available administrative remedies in compliance with Texas law.

The federal habeas corpus statutes, codified as amended at 28 U.S.C. § 2254(b) and (c), provide that relief "shall not be granted" unless the applicant "has exhausted the remedies available in the courts of the State[.]" Thus, a petitioner "must exhaust all available state remedies before he may obtain federal habeas corpus relief." *Sones v. Hargett*, 61 F.3d 410, 414 (5th Cir. 1995). The doctrine of exhaustion reflects a policy of federal/state comity. *See Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991). Exceptions exist only where there is an absence of available State corrective process or circumstances exist that render such process ineffective to protect the rights of the applicant. 28 U.S.C. § 2254(b).

Texas prisoners are not required to present claims concerning disciplinary convictions to the state courts in a state habeas corpus petition, because those claims are not cognizable on state habeas review. *See Ex parte Brager*, 704 S.W.2d 46, 46 (Tex. Crim. App. 1986). Instead, Texas prisoners within the Texas Department of Criminal Justice who challenge the

6

result of a prison disciplinary conviction must seek relief through the two-step prison grievance process. *See id.*; *see also, e.g., Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998) (outlining the two-step grievance process available in TDCJ). In that regard, § 501.008 of the Texas Government Code requires inmates to fully exhaust the administrative grievance process before resorting to court. If an inmate fails to do so, his claims may be dismissed for failure to exhaust administrative remedies. *See  Ex Parte Stokes*, 15 S.W.3d 532, 533 (Tex. Crim. App. 2000).

Navarro's petition is governed by 28 U.S.C. § 2254. *See, e.g., Malchi v. Thaler*, 211 F.3d 953, 956 (5th Cir. 2000) ("State prisoners who allege that they were improperly denied good-conduct credit that, if restored, would have resulted in their immediate or sooner release from prison, fall under § 2254.") (citations omitted). Although decisions about prison grievances are made by TDCJ, and not by "courts of the State," there is no valid reason that the exhaustion requirement found in 28 U.S.C. § 2254(b) should not also apply where a prisoner is required to pursue the administrative grievance process. *See Prieser v. Rodriguez*, 411 U.S. 475, 492 (1973) (pointing to the prison grievance process and noting that, because the "internal problems of state prisons involve issues so peculiarly within state authority and expertise, the States have an important interest in not being bypassed in the correction of those problems"). In fact, the Fifth Circuit has long held that inmates seeking relief from prison disciplinary cases must exhaust their available administrative remedies before pursuing a federal writ of habeas corpus. *See Lerma v. Estelle*, 585 F.2d 1297, 1299 (5th Cir. 1978).

7

Because Navarro did not appeal from his disciplinary convictions in case numbers 20040160537, 20040166370, and 20040170176 by filing a Step 1 or Step 2 grievance at the administrative level, it is apparent that Navarro has failed to exhaust remedies that were available to him.  The respondent notes that it would be futile for Navarro to raise these claims by filing another grievance at this point.  It is a well-established principle in habeas corpus review that if a petitioner fails to exhaust his remedies, but the tribunal to which he would be required to return to meet the exhaustion requirement would now find the claim procedurally barred, "then there has been a procedural default for purposes of federal habeas corpus relief."  *Finley v. Johnson*, 243 F.3d 215, 219 (5th Cir. 2000).

Navarro does not dispute that he failed to exhaust his administrative remedies with regard to his disciplinary convictions in case numbers 20040160537, 20040166370, and 20040170176.  Lack of exhaustion may be excused.  *See Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir. 2005).  For example, a petitioner may overcome such a procedural default and obtain federal habeas corpus review of his barred claims on the merits if he can demonstrate "cause" for his default and "actual prejudice."  *Id*. (citation omitted).  A petitioner may also overcome a procedural default if he can show that "failure to consider the claims will result in a fundamental miscarriage of justice."  *Id.* at 491-92 (citations and quotation omitted).  Navarro offers no excuse for his failure to exhaust administrative remedies, and he does not otherwise show that any exception applies.  Therefore, the Court agrees that any challenge by Navarro to his disciplinary convictions in case numbers 20040160537, 20040166370, and 20040170176 is barred by the doctrine of procedural default and that his request for federal

8

habeas corpus relief from the sanctions imposed therein must be denied.  Alternatively, for reasons set forth below, the Court concludes that Navarro fails to establish a valid claim for federal habeas corpus relief in connection with any of the prison disciplinary convictions referenced in his petition.

## IV.    PRISON DISCIPLINARY PROCEEDINGS

The petitioner in this case seeks federal habeas corpus relief from several disciplinary convictions entered against him while in prison.  The federal writ of habeas corpus is an extraordinary remedy which shall not extend to any prisoner unless he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §§ 2241(c)(3) & 2254(a); *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993) (explaining that "the writ of habeas corpus has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness").  Thus, to prevail on his request for federal habeas corpus relief the petitioner must establish a constitutional violation.

### A.    Due Process

In the disciplinary hearing context a prisoner's rights, if any, are governed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).  However, prisoners charged with institutional rules violations are entitled to rights under the Due Process Clause *only* when the disciplinary action may result in a sanction that will infringe upon a constitutionally protected liberty interest.  *See Sandin v. Conner*, 515 U.S. 472 (1995).  Liberty interests emanate from either

9

the Due Process Clause itself or from state law. *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).  Liberty interests arising from state law are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484 (internal citations omitted). Only those state-created substantive interests that "inevitably affect the duration of [a prisoner's] sentence" may qualify for constitutional protection under the Due Process Clause. *Id*. at 487. *See also Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995), *cert. denied*, 516 U.S. 1059 (1996).  Navarro's claims are addressed below to determine whether he demonstrates a due process violation.

### 1.   Sanctions Involving Privileges, Cell Restriction, and Class Status

Among the disciplinary sanctions challenged by Navarro are curtailed commissary or recreational privileges, temporary cell restrictions, and reductions in his class status. According to well-settled precedent, sanctions that are "merely changes in the conditions of [an inmate's] confinement" do not implicate due process concerns. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997).  Limitations imposed upon commissary or recreational privileges, and a cell restriction or solitary confinement on a temporary basis, are the type of sanctions that do not pose an atypical or significant hardship beyond the ordinary incidents of prison life. *See Madison*, 104 F.3d at 768; *see also Sandin*, 515 U.S. at 486 (refusing to recognize a liberty interest in administrative segregation).  The Fifth Circuit has

10

also decided that a reduction in a prisoner's class status and its potential impact on good-time credit earning ability are not protected by the Due Process Clause. *See Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995), *cert. denied*, 517 U.S. 1196 (1996).

Because the sanctions involving lost privileges, temporary cell restrictions, and reductions in class status do not implicate a constitutionally protected liberty interest, these allegations fail to state a claim that is cognizable on federal habeas corpus review. In other words, absent an allegation that the petitioner has been deprived of some right secured to him by the United States Constitution or laws of the United States, federal habeas corpus relief is not available. *See Orellana*, 65 F.3d at 31; *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190, 1192 (5th Cir. 1985). The respondent is therefore entitled to summary judgment on Navarro's claims concerning these sanctions.

### 2.   Claims Concerning Lost Good-Time Credits

As a result of Navarro's disciplinary convictions prison officials also revoked a total of 880 (30, 60, 60, 730) days of previously earned good-time credit. A challenge to the loss of good-time credits generally requires a separate analysis. *See Madison*, 104 F.3d at 768. There is no constitutional guarantee to assure credit for good conduct while in prison. *See Wolff*, 418 U.S. at 557. However, when a state creates a right to time credit for good conduct and recognizes that its revocation is an authorized sanction for misconduct, "a prisoner's interest therein is embraced within the Fourteenth Amendment 'liberty' concerns so as to entitle him to those minimum procedures appropriate under the circumstances and required

11

by the due process clause to insure that this state-created right is not arbitrarily abrogated." *Madison*, 104 F.3d at 768 (citing *Wolff*, 418 U.S. at 557).

Texas law provides that good-time credits apply only to eligibility for release on parole or mandatory supervision and do not affect the length of an inmate's sentence. *See* TEX. GOV'T CODE ANN. § 498.003; *Ex parte Montgomery*, 894 S.W.2d 324, 328 (Tex. Crim. App. 1995). Noting that the statutory scheme was recently revised to "avoid creating a protected liberty interest," the Fifth Circuit has avoided the question of whether the loss of accrued good-time credits under current Texas law implicates due process concerns. *See Hudson v. Johnson*, 242 F.3d 534, 535-36 & n.1 (5th Cir. 2001) (citations omitted). Assuming that Navarro may have had a liberty interest in his accrued good-time credit, the revocation of those credits must comply with the minimum amount of procedural protection required under the circumstances. *See Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 454 (1985); *Henson v. United States Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000).

Prison disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." *Wolff*, 418 U.S. at 561. Thus, prison disciplinary hearings are "not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* at 556 (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). The constitutional minimum of due process required for prison inmates under these circumstances includes: (1) advance written notice of the disciplinary charges; (2) an

opportunity to call witnesses and present documentary evidence when the presentation is not unduly hazardous to institutional safety and correctional goals; and (3) a written statement by the fact finder of the evidence relied upon and the reason for the disciplinary action. *See Wolff*, 418 U.S. at 563-67.

Navarro does not deny that he received advance notice of the charges against him. Likewise, Navarro does not dispute that he had a hearing at which he had an opportunity to call witnesses and present evidence.  Nor does Navarro contest that he received a written statement of the fact finder, relating the evidence relied upon and the reasons for the decision.  In this case, Navarro argues that the disciplinary sanctions violate due process because he had a valid excuse for refusing his housing assignment in each case.  Because prison disciplinary officials rejected the excuse offered by Navarro, the Court construes this argument as a challenge to the sufficiency of the evidence.

When reviewing a prison disciplinary decision, "the standard to be applied is whether or not actions of the disciplinary committee were arbitrary and capricious or an abuse of discretion." *Smith v. Rabalais*, 659 F.2d 539, 543 (5th Cir. Unit A 1981), *cert. denied*, 455 U.S. 992 (1982); *see also Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995); *Turner v. Johnson*, 46 F. Supp. 2d 655, 660 (S.D. Tex. 1999).  To satisfy the Due Process Clause in the context of prison disciplinary proceedings "requires only that there be some evidence to support the findings made in the disciplinary hearing."  *Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 457 (1985).  "The goal of this standard -- variously a 'modicum of evidence,' 'any evidence,' or 'some evidence' -- is to balance the

need to prevent arbitrary deprivation of protected liberty interests with the need to acknowledge institutional interests and avoid administrative burdens." *Hudson v. Johnson*, 242 F.3d 534, 536 (5th Cir. 2001) (citing *Hill*, 472 U.S. at 455). Thus, federal habeas corpus courts "do not assess the weight of the evidence" when reviewing prison disciplinary proceedings, and need only examine whether the guilty finding has the "support of 'some facts' or 'any evidence at all.'" *Hudson*, 242 F.3d at 537.

Navarro concedes that he refused his housing assignment on each occasion that resulted in the disciplinary charges filed against him in February of 2004. Navarro maintains that he refused his housing assignment in each instance because he had received threats in November of 2003 from members of a Mexican prison gang who were demanding money. (Docket Entry No. 2, *Memorandum*, at 1; Docket Entry No. 12, *Disciplinary Hearing Report*, at 4). Navarro argued, therefore, that his disciplinary rules violation should be excused because he refused his housing assignment based upon his belief that his life was in danger. The disciplinary hearing officers in each case rejected Navarro's excuse.

According to the records from each disciplinary hearing, Navarro's refusal to accept housing assignments is documented by offense reports prepared by the charging officers as well as evidence gathered during an independent investigation of his life endangerment claims. (Docket Entry No. 12, *Disciplinary Hearing Report*, at 2-12, 14-21, 24-30, 33-38). Although Navarro attended his first hearing in case number 20040160537, he refused to attend the hearings held in the subsequent three cases. (Docket Entry No. 12, *Disciplinary Hearing Report*, at 1, 13, 23, 32). The disciplinary captain at each hearing based his guilty

finding on the fact that Navarro failed to offer anything to refute the charging officer's offense report and the additional information obtained during the investigation, which showed that his claims of life endangerment were unsupported.  (Docket Entry No. 12, *Disciplinary Hearing Report*, at 1, 13, 23, 32).  Navarro acknowledges that the Unit Classification Committee conducted no fewer than three investigations into his complaints of life endangerment in which Navarro had requested a transfer from the Ellis Unit to another facility.  During each of these investigations the State Classification Committee ultimately decided against transferring Navarro to a different unit.

As noted above, a federal habeas corpus court may not weigh evidence when reviewing a prison disciplinary proceeding.  *See Hudson*, 242 F.3d at 537.  Navarro's admission that he refused housing is more than sufficient evidence to support the disciplinary convictions at issue.  Apart from his admissions, the charging officers' written offense reports are also sufficient to constitute sufficient evidence in support of the prison officials' findings in these cases.  *See Hudson*, 242 F.3d at 537 (finding that the offense report, standing alone, meets the "some evidence" standard).  The investigatory records regarding Navarro's life endangerment claims constitute sufficient evidence to support the decision to reject his stated reason for refusing to accept a housing assignment in each of the disciplinary cases.  Navarro does not establish that any of the evidence presented against him at the hearings was false or unreliable.[1]  Under these circumstances, Navarro has not demonstrated

---

[1]    Other than his general allegation that he received a threat during the month of November 2003, Navarro presents no evidence showing that he received additional threats during
(continued...)

that any of his disciplinary convictions for refusing a housing assignment run afoul of the Due Process Clause for lack of sufficient evidence.  Accordingly, he is not entitled to federal habeas corpus relief on this issue.

### B.    Equal Protection

Navarro alleges in his petition that he was denied equal protection during his disciplinary proceedings.  This allegation is easily dispatched.

The Equal Protection Clause of the Fourteenth Amendment requires that similarly situated persons be treated alike. *Mayabb v. Johnson*, 168 F.3d 863, 870 (5th Cir. 1999) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)).  Navarro does not allege or show that he was treated differently from other, similarly situated prisoners.  Nor does he demonstrate that the decision reached by prison officials was made without any rational basis due to illegitimate animus or ill-will. *See, e.g., Shipp v. McMahon*, 234 F.3d 907, 916 (5th Cir. 2000) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam) (discussing equal protection claims brought by a "class of one").  Thus, Navarro fails to state a valid equal protection claim and he is not entitled to habeas corpus relief on this theory.

---

[1](...continued)
February 2004, when he refused housing.  According to Navarro's pleadings, he received many threats after the convictions were already entered against him.  (Docket Entry No. 2, *Memorandum*, at 4).  Since that time, Navarro has been transferred from the Ellis Unit.  He is now confined at the Coffield Unit in Tennessee Colony, Texas.  As noted below, Navarro's Eighth Amendment claims concerning his housing assignments at the Ellis Unit have been rejected in a separate civil rights lawsuit filed against members of the State Classification Committee.  *See Navarro v. Buentello, et al.*, Civil Action No. H-04-2949 (S.D. Tex. Nov. 12, 2004) (dismissing as frivolous).

### C.    Civil Rights Claims

Navarro includes with his habeas corpus petition allegations that prison officials at the Ellis Unit forced him to accept housing that posed a risk to his safety in violation of the Eighth Amendment.  Thus, Navarro appears to argue that his disciplinary convictions for refusal to accept housing violate the Eighth Amendment's prohibition against cruel and unusual punishment because he had a legitimate fear for his safety.  These claims arguably concern the conditions of his confinement that are governed by 42 U.S.C. § 1983, and not the federal habeas corpus statutes.  *See Cook v. Texas Dep't of Criminal Justice Transitional Planning Dep't*, 37 F.3d 166, 168 (5th Cir. 1994) (observing that an action under 42 U.S.C. § 1983 is the appropriate legal vehicle to attack unconstitutional conditions of confinement).

Ordinarily, courts in this Circuit are obliged to separately consider civil rights claims mixed in with requests for habeas corpus relief.  *See Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995); *Serio v. Members of Louisiana State Bd. of Pardons*, 821 F.2d 1112, 1119 (5th Cir. 1987).  It is unnecessary to do so in this case.  Navarro's Eighth Amendment claims concerning his housing assignments at the Ellis Unit have been raised and rejected already in a separate civil rights suit filed by Navarro against members of the State Classification Committee under 42 U.S.C. § 1983.  *See Navarro v. Buentello, et al.*, Civil Action No. H-04-2949 (S.D. Tex. Nov. 12, 2004) (dismissing as frivolous).

A prior judgment is given *res judicata* effect where "(1) the parties to both actions are identical (or at least in privity); (2) the judgment in the first action is rendered by a court of competent jurisdiction; (3) the first action concluded with a final judgment on the merits; and

17

(4) the same claim or cause of action is involved in both suits." *Proctor & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 (5th Cir. 2004) (quoting *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir. 2000)).  The Court finds that all elements of this test are satisfied in this instance.  Accordingly, Navarro's claims under the Eighth Amendment are barred by the doctrine of *res judicata* and are further subject to dismissal as malicious.  *See* 28 U.S.C. § 1915(e)(2)(B)(i) (providing that duplicative civil rights claims brought by prisoners proceeding *in forma pauperis* are subject to dismissal as malicious).

## V.     CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997).  "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282

(2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).   Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336.   Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For all of the reasons discussed above, the Court concludes that jurists of reason would not debate whether the petitioner has stated a valid claim or whether any procedural ruling in this case was correct.  Accordingly, a certificate of appealability will not issue in this case.

## VI.    <u>CONCLUSION</u>

Based on the foregoing, the Court **ORDERS** as follows:

1.    The respondent's motion for summary judgment (Docket Entry No. 13) is **GRANTED**.

2.    The respondent's motions for leave to appear *pro hac vice* and for leave to substitute counsel (Docket Entry Nos. 24, 25) are **GRANTED**.

3.      The petitioner's application for a writ of habeas corpus is **DENIED**, and this

case is **DISMISSED** with prejudice.

4.      A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas, on **November 30, 2005.**

Nancy F. Atlas
United States District Judge